# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

CANDACE MELANIE VIALPANDO,

    Plaintiff,

vs.                                            Civ. No. 18-425 SCY

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 17) filed July 31, 2018, in support of Plaintiff Candace Melanie Vialpando's Complaint (Doc. 1) seeking review of the decision of Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, denying Plaintiff's claim for disability insurance benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. On November 30, 2018, Plaintiff filed her Motion to Reverse and Remand for a Rehearing With Supporting Memorandum ("Motion"). Doc. 24. The Commissioner filed a Brief in Response on February 25, 2019 (Doc. 28), and Plaintiff filed a Reply on March 18, 2019 (Doc. 30). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds the Motion is not well taken and is **DENIED.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 7, 12.

I.   **Background and Procedural Record**

Claimant Candace Melanie Vialpando suffers from the following severe impairments: fibromyalgia, coagulation disorder, and affective disorder. Administrative Record ("AR") at 15. She alleges that she became disabled as of August 8, 2012. AR 15. She earned a bachelor's degree in education and used to work a school teacher but was terminated by the school district due to her absences. AR 42-43, 214.

On February 18, 2015, Ms. Vialpando filed a claim of disability under Title II of the Social Security Act. AR 180. Her application was denied on May 12, 2015 (AR 117), and upon reconsideration on September 15, 2015 (AR 124). Administrative Law Judge ("ALJ") Michael Leppala conducted a hearing on January 23, 2017. AR 28-68. Ms. Vialpando appeared in person at the hearing with attorney representative Michelle Baca. *Id*. The ALJ took testimony from Ms. Vialpando and an impartial vocational expert, Marsha Heald. *Id.*

On May 3, 2017, ALJ Leppala issued an unfavorable decision. AR 10-22. On March 22, 2018, the Appeals Council issued its decision denying Ms. Vialpando's request for review and upholding the ALJ's final decision. AR 1-6. On May 5, 2018, Ms. Vialpando timely filed a Complaint seeking judicial review of the Commissioner's final decision. Doc. 1. Because the parties are familiar with Plaintiff's medical history, the Court reserves discussion of the medical records relevant to this appeal for its analysis.

II.  **Applicable Law**

   A.   Disability Determination Process

An individual is considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance

benefits); *see also id.* § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[2] If the claimant is engaged in substantial gainful activity, he is not disabled regardless of his medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, he is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform his past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's

---

[2] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before. *Id.* Gainful work activity is work activity that you do for pay or profit. 20 C.F.R. §§ 404.1572(b), 416.972(b).

> RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.  Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 2019 WL 1428885, at *3, __ S. Ct. __, (U.S. Apr. 1, 2019). Substantial evidence "is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118, or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

### III. Analysis

In support of her Motion to Remand, Ms. Vialpando argues: the ALJ impermissibly disregarded limitations in a state agency non-examining consultant's opinion and failed to sufficiently credit the opinion of her treating physician, Dr. Dean. The Court does not find either argument compelling and affirms the ALJ's decision.

#### A. The ALJ Did Not Improperly Disregard the State Agency Consultant's Opinion.

State agency consultant Carol Mohney Ph.D, evaluated Ms. Vialpando's medical records on April 30, 2015. AR 86-90. Dr. Mohney reviewed and discussed the medical evidence and, in

5

answering questions relating to Ms. Vialpando's mental residual functional capacity assessment

("MRFCA"), assessed in worksheet format the following "moderate limitations"[3]:

- The ability to understand and remember very short and simple instructions.

- The ability to make simple work-related decisions.

- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

- The ability to accept instructions and respond appropriately to criticism from supervisors.

- The ability to respond appropriately to changes in the work setting.

AR 87-88.

In her narrative, Dr. Mohney found that Ms. Vialpando "has had some fluctuations in symptoms over the past couple of years," but "most recently her symptoms have stabilized." AR 90. "Although she does have some difficulty in concentration as noted in her function report and in the objective medical records this is a moderate impairment. She is able to count change and use a savings account. She reports daily use of the computer and shops in grocery stores." AR

---

[3] Dr. Mohney did not use special Form SSA-4734-F4-SUP. That form contains three sections, one of which is a worksheet for rating functional limitations (Section I) and another which is for recording the mental RFC determination (Section III). Instead, she used an MRFCA form which contains the same worksheet questions and the same rating system. AR 86-90. The instructions explain: "The questions below help determine the individual's ability to perform sustained work activities. However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describe how the evidence supports each conclusion." AR 86-87. As such, the structure of the form the ALJ used is essentially the same as the structure of Form SSA-4734-F4-SUP: the consultant answers questions on the worksheet to indicate degrees of various functional limitations (the equivalent of Section I) and then uses this, and other, information to determine a claimant's mental residual capacity assessment set forth in the narrative discussion (the equivalent of Section III). Case law discussing "Section I" and "Section III" therefore remains relevant.

90. In late 2014 and early 2015, clinic visits noted "much improvement in her symptoms." AR 90. Dr. Mohney concluded: "Claimant has a capacity to perform unskilled work." AR 90.

The ALJ accorded Dr. Mohney's opinion "great weight" in steps two and three of his analysis and assigned claimant moderate limitations in "understanding, remembering, or applying information," "interacting with others," and "concentrating, persisting, or maintaining pace"; and mild limitations in "adapting or managing oneself." AR 16-17. At step four, in relevant part, the ALJ calculated Ms. Vialpando's RFC as follows:

> The Claimant can understand, carry out, and remember simple instructions and make commensurate work-related decisions, respond appropriately to supervision, coworkers and work situations, deal with routine changes in work setting, and maintain concentration, persistence and pace for up to and including two hours at a time with normal breaks throughout a normal workday. The Claimant is limited to simple, routine and repetitive tasks and is suitable for jobs requiring occasional interaction with the public.

AR 17. The ALJ again assigned Dr. Mohney's opinion "great weight" at step four. AR 20.

Ms. Vialpando argues that the ALJ contradictorily afforded Dr. Mohney's opinion "great weight," but went on to disregard, without explanation, many of the limitations Dr. Mohney endorsed in her opinion. Doc. 24 at 14. Specifically, Plaintiff argues that the ALJ failed to include in his RFC: (1) "any limitations in interacting with supervisors or coworkers"[4]; (2) "moderate limitations in making simple work-related decisions"; (3) "moderate limitations in completing a normal work day/week without interruption"; (4) "moderate limitations in responding appropriately to changes in work setting"; and (5) "moderate limitations in understanding and remembering very short and simple instructions." *Id.* at 14-15.

---

[4] Contrary to Ms. Vialpando's argument, Dr. Mohney did not limit Ms. Vialpando in interacting with coworkers. AR 88 ("The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Not significantly limited.").

Ms. Vialpando invokes the Tenth Circuit's holding in *Haga v. Astrue* that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." 482 F.3d 1205, 1208 (10th Cir. 2007); *see* Doc. 24 at 15. In *Haga*, a state agency examining psychological consultant reviewed the record and recommended additional testing. 482 F.3d at 1207. The ALJ agreed and the doctor did his additional tests. *Id.* "[P]art of his detailed response was to fill out a mental RFC form, on which he marked appellant moderately impaired in seven out of ten functional categories." *Id.* While ALJ's RFC incorporated three of these moderate limitations, it did not incorporate the other four. *Id.* Further, the ALJ did not provide an explanation for rejecting the remaining four moderate limitations and "the evidence on which the ALJ explicitly relied in his decision [did] not imply an explanation . . . ." *Id.*

On appeal, the Tenth Circuit noted "it is simply unexplained why the ALJ adopted some of [the doctor]'s restrictions but not others." *Id.* at 1208. Although an "ALJ is entitled to resolve any conflicts in the record," the court stressed that an ALJ must actually identify the evidence that conflicts with the medical opinion or RFC assessment. *Id.* The Tenth Circuit reinforced this point later that same year when it applied *Haga* to remand where the "ALJ erred in accepting some of the moderate limitations in the Mental RFC form completed by . . . a nonexamining physician, but rejecting others without discussion." *Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007).

When a doctor who assesses Section I moderate limitations also opines on a claimant's residual functioning capacity, however, the ALJ does not necessarily need to discuss each moderate limitation. This limitation of *Haga* and *Astrue*'s scope comes from the Tenth Circuit's decision in *Smith v. Colvin*, 821 F.3d 1264, 1268-69 (10th Cir. 2016). In *Smith*, the consulting

8

doctor reviewed the claimant's records and completed a worksheet finding that she had moderate limitations in a variety of nonexertional categories:

- maintain concentration, persistence, and pace,
- remain attentive and keep concentration for extended periods,
- work with others without getting distracted,
- complete a normal workday and workweek without interruption for psychologically based systems,
- perform at a consistent pace without excessive rest periods,
- accept instructions and respond appropriately to criticism by supervisors,
- get along with coworkers or peers without distracting them or engaging in behavioral extremes,
- respond appropriately to changes in the workplace, and
- set realistic goals or independently plan.

*Id.* at 1268.

Although the doctor found moderate limitations in nine Section I categories, in forming the claimant's mental residual functional capacity the doctor simply opined that the claimant could "(1) engage in work that was limited in complexity and (2) manage social interactions that were not frequent or prolonged." *Id.* The ALJ, in turn, assessed that the claimant "could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. The Tenth Circuit held that, although the ALJ "did not repeat the moderate limitations assessed by the doctor," affirmance was proper because the ALJ "incorporated these limitations by stating how the claimant was limited in the ability to perform work-related activities." *Id.*

*Smith* relied on *Vigil v. Colvin*, in which the court held that a claimant's moderate mental limitations in concentration, persistence, and pace were sufficiently taken into account by a

9

restriction to unskilled work. 805 F.3d 1199, 1204 (10th Cir. 2015). The *Vigil* ALJ had found that the claimant was moderately limited in the ability to maintain concentration for extended periods. *Id.* at 1203. But the ALJ further found that the claimant "retained enough memory and concentration to perform at least simple tasks." *Id.* at 1203-04 (alteration omitted). Because the limitation was "not critical" to the performance of unskilled work, the ALJ's RFC appropriately accounted for claimant's limitations. *Id* at 1204. In particular, "limiting the plaintiff to an SVP[5] of only one or two, adequately took into account his moderate limitations in concentration, persistence, and pace." *Id.*

*Smith* also favorably cited an unpublished case, *Lee v. Colvin*, 631 F. App'x 538 (10th Cir. 2015). In *Lee*, the ALJ adopted, "essentially verbatim, the limitations from Section III of the MRFCA." *Id.* at 541. The Court held that "[h]aving adopted the limitations described in section III of the MRFCA, the ALJ was not also required to specifically adopt or discuss each individual limitation described in section I." *Id.* Other unpublished opinions from the Tenth Circuit have affirmed the ALJ based on similar reasoning. *See, e.g.*, *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016); *Fulton v. Colvin*, 631 F. App'x 498, 502 (10th Cir. 2015).

Finally, the Tenth Circuit in *Smith* expressly stated that asking "how the administrative law judge's assessment incorporates the numerous moderate limitations indicated by [the doctor] . . . is the wrong question." 821 F.3d at 1269 n.2. The doctor's Section I notations, the Tenth Circuit explained, "serve[] only as an aid to her assessment of residual functional capacity." *Id.*

---

[5] The specific vocational preparation ("SVP") "refers to the 'time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Vigil*, 805 F.3d at 1201 n.2 (quoting the Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991), 1991 WL 688702 (G.P.O.)). "A job at SVP one requires 'a short demonstration only' and at SVP two requires 'anything beyond a short demonstration up to and including 1 month.'" *Id.*

The reviewing court is to "compare the administrative law judge's findings to [the doctor]'s opinion on residual functional capacity, not her notations of moderate limitations." *Id.*

The implications of this reasoning can best be understood by examining one of the Section I limitations discussed in *Smith*: a "moderate" limitation in the ability to "work with others without getting distracted." *Id.* at 1268. Unlike the situation in *Vigil*, the absence of discussion about this moderate limitation in the ALJ's decision cannot be accounted for by simply limiting a claimant to unskilled work. This is because the ability to "work in coordination with or proximity to others without being (unduly) distracted by them" is "critical for performing unskilled work." POMS § DI 25020.010, § B(3)(g).[6] Yet, even though the ALJ never discussed this moderate limitation and this moderate limitation cannot be accounted for through the limitation of the claimant to unskilled work, the Tenth Circuit in *Smith* rejected the claimant's argument that the ALJ's failure to address this moderate limitation constituted error.

Given that moderate limitations matter (*Haga*, 482 F.3d at 1208, made clear that "a moderate impairment is not the same as no impairment at all"), the question arises as to when the absence of ALJ discussion about a Section I moderate limitation requires remand (as in *Haga* and *Frantz*) and when the absence of ALJ discussion about a Section I moderate limitation constitutes no error. One situation that constitutes no error is when the ALJ justifiably gives the doctor's opinion little to no weight. SSR 96-6p, 1996 WL 374180, at *2 ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other

---

[6] The Social Security Administration Program Operations Manual System ("POMS") is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The reviewing court will defer to the POMS provisions unless they are arbitrary, capricious, or contrary to law. *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001); *see also Vigil*, 805 F.3d at 1204 (relying on the POMS' definition of unskilled work).

11

program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions."). *Vigil* makes clear that another situation is when the assignment to unskilled work incorporates or otherwise accounts for the Section I moderate limitation. *Smith* demonstrates that yet another situation is when the doctor who assessed the Section I moderate limitation has also reached an opinion on residual functional capacity in his or her Section III/narrative discussion, which the ALJ then accepts.

In this respect, *Smith* deviated from unpublished Tenth Circuit cases that called for the doctor to carefully adhere to Section I worksheet limitations when fashioning a narrative RFC. For example, in *Carver v. Colvin*, the Tenth Circuit held that an ALJ may not "turn a blind eye to moderate Section I limitations," and "[i]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." 600 F. App'x 616, 619 (10th Cir. 2015).[7]

Other judges in this District have declined to follow *Smith* on this ground that it is inconsistent with *Haga* and *Frantz*, and one panel of the Tenth Circuit cannot overrule another panel. *See, e.g.*, *Cordova v. Berryhill*, No. 17-cv-611-SMV, 2018 WL 2138647, at *7 (D.N.M. May 9, 2018); *Jones v. Berryhill*, No. 15-cv-842-LF, 2017 WL 3052748, at *5 n.6 (D.N.M. June 15, 2017). This Court does not agree that these cases are irreconcilable. *Haga* and *Frantz*

---

[7] Ms. Vialpando also cites a previous opinion by this Court which similarly held that a consulting physician must account for all worksheet moderate limitations in his narrative RFC, and the ALJ may not overlook inconsistencies between the two. Doc. 24 at 15; *Villanueva v. Berryhill*, No. 16-cv-999 SCY, 2018 WL 354674, at *4 (D.N.M. Jan. 10, 2018). On further consideration, as explained above, cases like *Villanueva* and *Carver* cannot be reconciled with the published Tenth Circuit opinion in *Smith*.

12

continue to stand for the proposition that "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." 482 F.3d at 1208. But they do not specify what exactly constitutes the doctor's ultimate "opinion" when a doctor has checked boxes on a form (Section I), the significance of which is then clarified through the doctor's narrative opinion about a claimant's RFC (Section III). Unlike *Smith*, the panels in *Haga* and *Frantz* did not consider a doctor's narrative RFC opinion and so had no occasion to opine about how Section I moderate limitations should be evaluated in light of a doctor's narrative RFC opinion.

*Haga* and *Frantz* therefore did not address the question *Smith* answers—whether an ALJ is permitted to rely on the doctor's ultimate opinion as expressed in the narrative RFC, when that RFC does not exactly match the doctor's own Section I worksheet limitations. As *Smith* explains, the doctor need not make sure the narrative and the worksheet exactly match. When the doctor fashions an RFC in his narrative opinion, that controls over any moderate worksheet limitations because the worksheet serves as an "aid" to an opinion and is not the opinion itself. *Smith*, 821 F.3d at 1269 n.2.

Based on *Smith*, the Court rejects Ms. Vialpando's argument that, once the ALJ gave great weight to Dr. Mohney, the ALJ was required to either adopt Dr. Mohney's Section I moderate limitations or explain, for each moderate limitation, why he did not adopt that limitation. *Smith* mandates affirmance here because the doctor's narrative RFC and the ALJ's RFC are consistent. In her narrative, Dr. Mohney opined that Ms. Vialpando "has a capacity to perform unskilled work." AR 90. The ALJ agreed that Ms. Vialpando can perform unskilled work. AR 19-20. Accordingly, in the RFC assessment, the ALJ limited Ms. Vialpando to "simple, routine and repetitive tasks." AR 17. Finally, the ALJ properly identified jobs Ms.

13

Vialpando could perform that are unskilled with an SVP of two. AR 22; *see Vigil*, 805 F.3d at 1204. Thus, even though the ALJ did not discuss all of Dr. Mohney's worksheet moderate limitations, he did not commit error.

> B. <u>The ALJ Gave Good Reasons for Giving Little Weight to the Opinion of Ms. Vialpando's Treating Physician.</u>

In her motion, Ms. Vialpando raises two arguments related to fibromyalgia. First, Ms. Vialpando argues that the ALJ should have adopted the summary opinion of her treating physician that Ms. Vialpando is disabled as a result of her fibromyalgia. Second, Ms. Vialpando argues that the ALJ improperly discounted her subjective symptom evidence. Because nothing in the record indicates compliance with the criteria set forth in Social Security Ruling ("SSR") 12-2p for diagnosing a medically determinable impairment of fibromyalgia, her arguments fail.

Dr. Jacqueline Dean is a rheumatologist and Ms. Vialpando's treating physician. AR 454-72, 602-04, 627-34. Dr. Dean authored a handwritten note in December 2016 which states, in full:

> It is my professional opinion that this patient is permanently disabled due to a combination of medical problems including fibromyalgia, hypersomnia, depression.

AR 646.[8] The ALJ disregarded this opinion because: (1) it does not provide a function by function assessment of Ms. Vialpando's abilities and limitations; (2) the issue of disability is reserved for the Administration; and (3) Dr. Dean fails to explain how she arrived at her conclusions. AR 20. The ALJ also found that Dr. Dean's treating records do not contain the requisite explanation to establish that Ms. Vialpando's fibromyalgia is disabling. AR 19.

---

[8] Although Dr. Dean's handwritten note says Plaintiff is disabled due not only to fibromyalgia but also because of her hypersomnia and depression, Plaintiff's motion to remand discusses only the impairment of fibromyalgia. The Court limits its own discussion accordingly.

Specifically, Dr. Dean's treating records do not demonstrate the requirements for a disability finding based on fibromyalgia under SSR 12-2p. AR 19.

SSR 12-2p "provides guidance on how [the administration] develop[s] evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia (FM)." 2012 WL 3104869, at *1. "As with any claim for disability benefits, before we find that a person with FM is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." *Id.* at *2. This "objective evidence" can only come from a treating physician. *Id.* A diagnosis alone is not enough; the treating physician must document that she reviewed the person's medical history and conducted a medical exam. *Id.* SSR 12-2p sets forth two tracks by which a claimant may demonstrate a medically determinable impairment of fibromyalgia: the 1990 ACR Criteria for the Classification of Fibromyalgia and the 2010 ACR Preliminary Diagnostic Criteria. *Id.* Both require that the claimant demonstrate a "history of widespread pain" in all quadrants for at least three months. *Id.* at *2-3. Both also require that the treating physician provide evidence that other disorders which could cause the same symptoms have been excluded. *Id.*

Dr. Dean's December 2016 handwritten note, standing alone, fails to comply with SSR 12-2p. This note simply contains Dr. Dean's diagnosis. It cites to no objective evidence, sets forth no "history of widespread pain", and fails to consider whether other disorders could have caused the same symptoms.

Looking beyond the handwritten note, Dr. Dean did fill out a check-the-boxes style form evaluating the 2010 ACR Preliminary Diagnostic Criteria for fibromyalgia. AR 648-49. But checkbox-style findings must be supported by explanation or other clinical opinions from the

medical source before the ALJ is required to give them any weight. *See Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008); *Chapo v. Astrue*, 682 F.3d 1285, 1289 (10th Cir. 2012); *Anderson v. Astrue*, 319 F. App'x 712, 723-24 (10th Cir. 2009). As the ALJ explained, the record does not contain support for Dr. Dean's opinion that Ms. Vialpando's fibromyalgia is disabling under the standards set forth in SSR 12-2p. "In terms of clinical limitations, [Ms. Vialpando's] examinations revealed no abnormalities in motor function or sensation." AR 19. The ALJ also noted that Ms. Vialpando's treating providers did not note a "history of widespread pain" or "demonstrat[e] that other disorders were considered and excluded." *Id.* (citing SSR 12-2p).

In her motion, Ms. Vialpando merely emphasizes some of the record evidence that is consistent with a diagnosis of fibromyalgia. Doc. 24 at 16. Dr. Dean's treatment notes document muscle tenderness and weakness; depression and tears; and fibromyalgia symptoms that are "severe." *See* AR 392, 459, 463. But as described above, this is not enough to satisfy the standards in SSR 12-2p.

Ms. Vialpando attempts avoid the requirements of SSR 12-2p by arguing that the ALJ was required to credit her subjective symptoms because fibromyalgia symptoms are "entirely subjective." Doc. 24 at 18. Ms. Vialpando contends that case law has held that an ALJ may not discount fibromyalgia symptoms due to a lack of "objective findings." *Id.* (citing *Biri v. Apfel*, 4 F. Supp. 2d 1276, 1279 (D. Kan. 1998); and *Glenn v. Apfel*, 102 F. Supp. 2d 1252, 1258 (D. Kan. 2000)). The cases Ms. Vialpando relies on, however, were issued in 1998 and 2000 – long *before* the enactment of SSR 12-2p, which was issued on July 25, 2012. Thus, the cases Ms. Vialpando cites must give way to SSR 12-2p, which unambiguously rejects the proposition that subjective evidence can establish a medically determinable impairment of fibromyalgia. 2012 WL 3104869,

16

at *2. Contrary to Ms. Vialpando's assertion, the ALJ properly followed SSR 12-2p in evaluating Ms. Vialpando's fibromyalgia.

Despite the clear dictates of SSR 12-2p, Ms. Vialpando argues that the ALJ failed to appropriately analyze Dr. Dean's opinion under the legal standard for evaluating the opinions of a treating physician. "[I]n evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ should determine whether the opinion is entitled to "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (internal quotation marks omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.* "[A]t the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Krauser*, 638 F.3d at 1330.

With regard to the first step, Ms. Vialpando contends that the ALJ failed to discuss whether Dr. Dean's opinion was entitled to controlling weight because it is well supported and not inconsistent with the other evidence of record. Doc. 24 at 17. The Tenth Circuit, however, has held that where a reviewing court can determine that an ALJ "implicitly declined to give the opinion controlling weight," the reviewing court should not reverse simply because the ALJ did not expressly say so. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014). Here, by stating that he gave Dr. Dean's opinion "little weight," the ALJ implicitly declined to give it controlling weight.

17

AR 20. Further, the ALJ found that it was inconsistent with other evidence of record. The ALJ noted that "State agency medical consultants, Myron Watkins, M.D., and M. Fountain M.D., opined that Claimant could perform light exertion work . . . ." AR 20. The ALJ gave great weight to these opinions "because they are consistent with the longitudinal medical history showing mild to moderate physical findings and are familiar with Social Security disability standards." AR 20. Thus, the ALJ clearly gave Dr. Dean's opinion less than controlling weight when he stated that he was giving it "little weight" and then cited contrary medical opinions and other evidence in support of this decision.

Although the opinions of treating doctors are generally given more deference than the opinion of consulting doctors, the ALJ here noted that the opinions of the consulting doctors were more consistent with Ms. Vialpando's medical history and the fact that her "treatment has been limited and essentially routine/conservative in nature." AR 20. In contrast, the ALJ determined that Dr. Dean's opinion was entitled to "little weight" because she did not explain her opinion. AR 20.

As for the second step, the ALJ provided good reasons for rejecting Dr. Dean's opinion even though he did not address each of the six factors in the regulations which guide the ALJ's determination of the level of deference he will give a treating physician. *Krauser*, 638 F.3d at 1330.[9] The Tenth Circuit has held that an ALJ is not required to "apply expressly each of the six

---

[9] This rule is no longer in effect for cases filed on or after March 27, 2017, but the superseded rule applies to the present case. The six factors in the old version of the regulation were: "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Goatcher v. U.S.*

18

relevant factors in deciding what weight to give a medical opinion." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). Rather, an ALJ need simply provide "good reasons" for the weight assigned to the treating physician's opinion. *Id.* The decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (internal quotation marks omitted); *see also Keyes-Zachary*, 695 F.3d at 1166 ("The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.").

The ALJ correctly noted that a treating physician's opinion that a claimant is "totally disabled" is "not binding on the Secretary in making his ultimate determination of disability" when "the treating physician's own office records d[o] not support" that opinion. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994). As the ALJ found (AR 18-19), other evidence contradicts Dr. Dean's diagnosis. Clinical notes document that Ms. Vialpando's fibromyalgia symptoms were controlled by medication and "improving" in April 2014, AR 407, 454; Ms. Vialpando was able to integrate physical therapy and a gym routine, AR 454; medication had a positive effect on her mental health, AR 583; she underwent counseling sessions through November 2014 without any evidence of abnormal mental status, AR 581-92; and records from October 2016 show normal bloodwork, AR 642. The ALJ's decision to give Dr. Dean's opinion little weight based on contradictory evidence in the record did not constitute error. *See Newbold v. Colvin*, 718 F.3d 1257, 1265-66 (10th Cir. 2013) (affirming an ALJ's decision to give "diminished weight" to a fibromyalgia questionnaire completed by a treating physician where the questionnaire was inconsistent with the treating physician's own reports,

---

*Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995) (quoting 20 C.F.R. § 404.1527(d)(2)-(6)).

other medical evidence of record, and the claimant's activities of daily living). Further, in deciding what weight to provide Dr. Dean's opinion that Ms. Vialpando's fibromyalgia was disabling, the ALJ appropriately considered the social security ruling related to fibromyalgia (SSR 12-2p) and whether the criteria contained in that rule were met.

In sum, the ALJ provided good reasons for according little weight to Dr. Dean's opinion. Substantial evidence exists to support the ALJ's decision.

## IV. Conclusion

For the reasons stated above, Ms. Vialpando's Motion to Motion to Reverse and/or Remand (Doc. 24) is **DENIED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**